UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| RONALD LEE DICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 6:13-cv-258-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 11, 12] on Plaintiff's appeal of the Commissioner's denial of his application for supplemental security income. [Tr. 20-26].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will grant Plaintiff's motion and deny Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

  1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

  2. An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 22]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of peripheral artery disease, right leg ischemia,

degenerative disc disease, and diverticulitis were "severe" as defined by the agency's regulations. [Tr. 22]; 20 CFR §§ 404.1420(c), 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 22]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform light work except that Plaintiff was limited to sitting four hours of an eight hour workday, standing two hours of an eight hour workday, walking for two hours of an eight hour workday, and should have a sit/stand option with alternating intervals of one hour. Further, Plaintiff is unable to climb ladders, ropes, or scaffolds, is unable to crawl, can only occasionally climb ramps and stairs, can occasionally balance, and can frequently stoop, kneel, and crouch. [Tr. 22-24].

The ALJ found that Plaintiff had no past relevant work. [Tr. 24]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 25]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 25-26].

In this appeal, Plaintiff argues that the ALJ erred when assessing weight to the medical opinion evidence of record, that the ALJ failed to account for all of Plaintiff's limitations in

his RFC assessment, and that the Court should remand to the Appeals Council because Plaintiff was determined to be disabled when he filed his second application for benefits.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 48 years of age at the time he filed his application for supplemental security income (SSI) and has a limited education. [Tr. 24]. Plaintiff has no past relevant work experience. [Tr. 24]. Plaintiff filed a Title XVI application

4

for SSI, alleging disability on June 28, 2010. [Tr. 20]. The claims were denied initially and upon reconsideration. [Tr. 20]. Plaintiff requested a hearing with the ALJ, which took place on September 8, 2011. [Tr. 20]. The ALJ issued an unfavorable decision denying SSI benefits on December 28, 2011. [Tr. 26].

According to Plaintiff, he has daily pain in his back, stomach, legs, and hips, which he describes as sharp, throbbing, and numbing. [Tr. 163-64]. Plaintiff treats his pain with pain medication and rest. [Tr. 164]. Plaintiff takes Pravachol, Temazepam, Lortab, Plavix, and Bayer. [Tr. 183].

Plaintiff regularly visited the Lake Cumberland Regional Hospital for treatment of his impairments. On September 3, 2009, Plaintiff presented complaining of fever, chills, and sore throat. [Tr. 207]. On July 7, 2010, Plaintiff was discharged from the hospital after being treated for diverticulitis. [Tr. 215]. On June 28, 2010, Plaintiff underwent a procedure for left basilica vein PICC line placement. [Tr. 216]. Shortly after the PICC line placement, Plaintiff underwent segmental resection surgery to repair a ruptured diverticulum with pericolic abscess. [Tr. 239]. Plaintiff also underwent a right supragenicular popliteal artery to posterior tibial artery bypass with reverse saphenous vein and an intraoperative angiogram to treat his right lower extremity ischemia. [Tr. 261-62]. On October 29, 2010, Plaintiff underwent "bilateral lower

extremity angiograms, right anterior tib and posterior tib AngioJet, right anterior tib peroneal and posterior tib, percutaneous transluminal angioplasty, right popliteal artery, and covered stent placement, right anterior tib proximal stent placement, left lower extremity angiogram." [Tr. 263-65]. These procedures were performed to treat Plaintiff's post bilateral iliac thrombosis and stenting, bilateral lower extremity residual clot, and post thrombolytic therapy. [Tr. 263].

A CT of the abdomen and pelvis on June 26, 2010 revealed a marked thickening of the sigmoid colon and multiple diverticula consistent with diverticulitis. [Tr. 235]. A CT of the abdomen and pelvis on July 17, 2011 revealed fat containing hernia lateral to the rectus muscle, a nonobstructing right nephrolithiasis, bilateral common iliac stents, surgical anastomosis in the sigmoid region, scattered diverticulosis with diverticulitis, an enlarged prostate, and degenerative spurring and disc disease of the thoracolumbar spine. [Tr. 458]. On April 18, 2011, a bilateral lower extremity arterial Doppler study indicated severe atherosclerotic obstructive disease on the right and mild to moderate trifurcation disease on the left. [Tr. 482].

Plaintiff visited Dr. Gregory Sherry for medical care. Dr. Sherry assessed Plaintiff with diverticulitis, cigarette abuse, peripheral vascular disease, and acute right lower extremity

ischemia. [Tr. 434]. Dr. Sherry completed an RFC assessment of Plaintiff on November 26, 2010. [Tr. 427-29]. Dr. Sherry diagnosed Plaintiff with diverticulitis, peripheral vascular disease, and ischemia. [Tr. 428]. Dr. Sherry opined that Plaintiff was capable of walking and standing less than one hour in a workday, could sit two hours in a workday, and needed to be able to alternate among positions. [Tr. 428]. Dr. Sherry further stated that Plaintiff was advised to keep his right lower extremity elevated when he was in a seated position. [Tr. 429].

Dr. Richard J. Heuer, a treating physician who performed several of Plaintiff's surgeries, *e.g.*, [Tr. 261], completed an RFC questionnaire for Plaintiff on December 31, 2010. Dr. Heuer's assessment was based upon his diagnosis of Plaintiff's peripheral artery disease. [Tr. 461]. Dr. Heuer opined that Plaintiff could walk and stand less than one hour in a workday and needed the ability to alternate between positions at will. [Tr. 461]. Dr. Heuer stated that Plaintiff was medically advised to keep his right lower extremity elevated while in the seated position. [Tr. 462].

Dr. Tommy Shelton, a treating physician, completed an RFC assessment of Plaintiff on December 21, 2010. [Tr. 490-92]. Based upon Dr. Shelton's diagnosis of arterial thrombosis in the lower extremities, he opined that Plaintiff could walk and stand two hours in a workday and sit three hours in a workday. [Tr.

491]. Dr. Shelton further opined that Plaintiff would need to be able to alternate among positions at will. [Tr. 491]. Dr. Shelton declined to express an opinion on whether Plaintiff was required to sit with his right lower extremity elevated, indicating that Dr. Heuer should make that decision. [Tr. 492].

Plaintiff underwent a consultative examination with Dr. Omar Chavez. [Tr. 243-48]. Dr. Chavez found that Plaintiff had normal muscle strength, had a normal gait, could walk on his heels and toes, could squat, and could get up from a chair. [Tr. 245]. Testing performed by Dr. Chavez revealed that there was a mild decrease in the range of motion in Plaintiff's lumbar region. [Tr. 245]. Dr. Chavez diagnosed Plaintiff with chronic lumbar pain, diverticular disease of the colon, status-post temporary colostomy, and dyslipidemia. [Tr. 245].

Vocational expert Mr. William Ellis testified at the hearing before the ALJ. [Tr. 43-47]. Mr. Ellis testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would be able to perform jobs in the national economy. [Tr. 44-45]. Mr. Ellis also testified that a sit/stand option would preclude all jobs at the medium exertional level, but would allow for jobs at the light or sedentary level. [Tr. 45].

Plaintiff claims that he is unable to take care of his personal needs and requires help from his girlfriend. [Tr. 165]. Plaintiff is unable to perform household chores and does not do

any shopping. [Tr. 166]. Plaintiff alleges that he stays tired and does not have energy to go places. [Tr. 166].

## IV. Analysis

Plaintiff claims five different grounds support remand of the Commissioner's decision. First, Plaintiff alleges that the ALJ improperly gave controlling weight to the opinion of consultative examiner, Dr. Omar Chavez. Second, Plaintiff argues that the ALJ erred by failing to provide good reasons for not giving controlling weight to Plaintiff's treating physicians. Next, Plaintiff argues that the ALJ improperly failed to include in his RFC assessment that Plaintiff was required to elevate his right leg while seated. Similarly, Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions posed to the vocational expert. Finally, Plaintiff argues that the Court should remand to the Appeals Council so that the Appeals Council can consider the effect of Plaintiff's subsequent grant of disability benefits by the Commissioner.

Defendant responds by arguing that the ALJ was entitled to rely on the opinion of Dr. Omar Chavez because Dr. Chavez's opinion was supported by the medical evidence of record. Defendant also contends that the ALJ properly provided good reasons for giving less weight to Plaintiff's treating physicians because the ALJ noted how the opinions were

inconsistent with the medical evidence of record. Next, Defendant argues that the ALJ's RFC assessment of Plaintiff is supported by substantial evidence. Defendant argues that the ALJ properly included all the limitations the ALJ found credible in the hypothetical questions posed to the vocational expert. Finally, Defendant argues that Plaintiff has failed to show why the new evidence submitted supports a remand to the Appeals Council. Each of the issues will be discussed in turn.

**I. The ALJ properly weighed the medical opinion of the consultative examiner, Dr. Omar Chavez.**

Plaintiff argues that the ALJ erred by giving great weight to the opinion of consultative examiner, Dr. Omar Chavez.

> [A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). "Opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)).

The ALJ did not err by giving great weight to the opinion of Dr. Omar Chavez. The ALJ expressly stated that he was considering Dr. Chavez's findings controlling only as they related to Plaintiff's allegations of back pain. [Tr. 24] ("The undersigned gives great weight to Dr. Chavez's findings regarding the claimant's back."). None of the treating physicians opined that they had treated Plaintiff for back pain. Thus, the ALJ found that the only opinion and objective medical testing as to Plaintiff's allegations of back pain was from Dr. Chavez. Dr. Chavez noted a mild decrease in range of motion of the lumbar spine based. [Tr. 245]. Furthermore, the ALJ noted a lack of treatment notes from Plaintiff's medical records as to his alleged back problems. [Tr. 24]. Therefore, the ALJ's decision to give great weight to the opinion of Dr. Chavez as to Plaintiff's allegations of back pain is supported by substantial evidence because Dr. Chavez's report on Plaintiff's back pain is the only evidence of record.

**II. The ALJ did not provide good reasons for giving little weight to the opinions of Plaintiff's treating physicians, Drs. Shelton and Sherry.**

Plaintiff argues that the ALJ failed to properly apply the treating physician rule in giving little weight to the opinions of Plaintiff's treating physicians, Drs. Shelton, Sherry, and Heuer.

11

> [A]n opinion from a medical source who has examined a
> claimant is given more weight than that from a source
> who has not performed an examination (a nonexamining
> source), and an opinion from a medical source who
> regularly treats the claimant (a treating source) is
> afforded more weight than that from a source who has
> examined the claimant but does not have an ongoing
> treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir.
2013) (citations omitted). "Treating-source opinions must be
given 'controlling weight' if two conditions are met: (1) the
opinion 'is well-supported by medically acceptable clinical and
laboratory diagnostic techniques'; and (2) the opinion 'is not
inconsistent with the other substantial evidence in the case
record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for
discounting the weight to a treating-source opinion." *Id.* at 376
(citing 20 C.F.R. § 404.1527(c)(2)). "These reasons must be
'supported by the evidence in the case record, and must be
sufficiently specific to make clear to any subsequent reviewers
the weight the adjudicator gave to the treating source's medical
opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-
2p, 1996 WL 374188, at *5 (July 2, 1996)). "[The Court] will
reverse and remand a denial of benefits, even though
'substantial evidence otherwise supports the decision of the
Commissioner,' when the ALJ fails to give good reasons for
discounting the opinion of the claimant's treating physician."

*Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

The Court cannot find that the reason provided by the ALJ for giving little weight to the opinion of Dr. Tommy Shelton was a "good" reason. The only reason provided by the ALJ for giving little weight to the opinion of Dr. Shelton is that Dr. Shelton indicated Plaintiff's impairment of diverticulitis was "stable." [Tr. 23]. The ALJ found that the treatment notes indicating "stable" were inconsistent with the RFC questionnaire completed. However, the term "stable" does not in any way conflict with Dr. Shelton's RFC questionnaire. The term "stable" is defined as "not changing or fluctuating." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/stable (last visited June 10, 2014) (defining "stable"). A doctor indicating that a patient's condition is not changing does not in any way express an opinion on the severity of that patient's condition or any limitations that condition may create. Therefore, a note stating that a condition has not changed cannot conflict with an earlier opinion on the severity of the condition. Thus, the ALJ failed to provide a good reason for giving little weight to the opinion of Dr. Shelton, and the ALJ erred by violating the treating physician rule as to Dr. Shelton.

Likewise, the reasons provided by the ALJ for giving little weight to the opinion of Dr. Sherry are inadequate. The reasons provided by the ALJ were that Dr. Sherry described Plaintiff has stable, doing well, and Dr. Sherry did not change his medication. Again, this is not inconsistent with Dr. Sherry's assessment of the severity of Plaintiff's impairments in the RFC assessment completed by Dr. Sherry. An indication that Plaintiff is stable means he is not spiraling downward or improving. A lack of change in no way reflects whether Plaintiff has the ability to perform work-related functions. Therefore, these treatment notes cannot be inconsistent with Dr. Sherry's RFC questionnaire. Thus, the ALJ also violated the treating physician rule when he gave little weight to the opinion of Dr. Sherry because he did not provide good reasons for the weight given.

The ALJ provided good reasons for giving little weight to the opinion of Dr. Heuer. The ALJ stated that he gave little weight to the opinion of Dr. Heuer because Dr. Heuer's latest treatment notes indicated that Plaintiff had no symptoms, no claudication, and was doing quite well. [Tr. 23-24]. The ALJ's reasons are supported by substantial evidence. Dr. Heuer completed his RFC assessment on December 31, 2010, [Tr. 460-62], and the last treatment note relied upon by the ALJ was written in April 2011. [Tr. 431]. The notes indicating "no symptoms" and

"no claudication" indicates an improvement in Plaintiff's condition from the Plaintiff's previous follow-up appointment. On December 29, 2010, which was the last visit prior to Dr. Heuer completing the RFC questionnaire, Dr. Heuer noted that Plaintiff's foot was warm and pink, and it was still swelling. [Tr. 295]. Thus, the ALJ put more emphasis on the later opinion of Dr. Heuer, found in the letter to Dr. Sherry, than the RFC questionnaire completed when Plaintiff was recovering from surgery. Because the good reasons provided for giving little weight to Dr. Heuer were supported by substantial evidence, the ALJ did not violate the treating physician rule as to Dr. Heuer. Due to the ALJ's lack of good reasons for giving little weight to Drs. Shelton and Sherry, this matter must be remanded to the Commissioner for further consideration.

**III.  The ALJ failed to include all of Plaintiff's credible limitations in Plaintiff's RFC assessment.**

Plaintiff argues that the ALJ erred by not including the limitation that Plaintiff had to keep his right leg elevated while sitting in Plaintiff's RFC assessment. An RFC is the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based upon all the relevant evidence in the case record. *Id.* "Although [the Social Security Administration] consider[s] opinions from medical sources on issues such as . . . [a claimant's] residual

functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2). An ALJ's RFC assessment will be upheld as long as it is supported by substantial evidence. *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) ("[W]e therefore hold that the ALJ's RFC determination is supported by substantial evidence.").

The ALJ's RFC assessment was not supported by substantial evidence. Plaintiff alleges that the ALJ erred by not including a limitation that Plaintiff needed to sit with his right leg elevated. Two treating physicians included in their RFC assessment that Plaintiff needed to have the ability to sit with his leg elevated. [Tr. 429; 462]. "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). The ALJ did not cite to any evidence that contradicts the limitation included by Plaintiff's treating physicians.

The ALJ's failure to discuss or include the limitation imposed by Plaintiff's treating physicians is similar to a case previously decided by our sister court.

> Even assuming the ALJ's rejection of the treating
> physician's functional assessment is supported by
> substantial evidence, the Court nevertheless concludes

that the ALJ's RFC finding is not supported by
substantial evidence. The RFC decision is not
supported by any physician opinion in the record. The
record is devoid of any other physician opinions on
plaintiff's physical functional capacity or
limitations. Unlike the typical Social Security case
this Court encounters, there are no RFC assessments
from the state agency reviewing physicians in this
matter. Nor are there any reports from consultative
physicians assessing plaintiff's functional capacity
or limitations. . . . Thus, the ALJ's RFC decision is
without any support from the opinions of any physician
of record.

*Perkins v. Comm'r of Soc. Sec.*, No. 1:10-cv-233, 2011 WL
2457817, at *6 (S.D. Ohio May 23, 2011), *adopted by Perkins v.*
2011 WL 2443950, at *1 (S.D. Ohio June 16, 2011).

Without medical evidence to the contrary, the ALJ's
exclusion of the limitation at issue is not supported by
substantial evidence. "[W]hile an ALJ is free to resolve issues
of credibility as to lay testimony, or to choose between
properly submitted medical opinions, the ALJ cannot substitute
his [or her] own lay medical opinion for that of a treating or
examining doctor." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097,
2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013), *adopted by*
No. 12-15097-DT, 2013 WL 5676251, at *1 (E.D. Mich. Oct. 18,
2013) (citations omitted) (internal quotation marks omitted);
*see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)
("[T]he ALJ was simply not qualified to interpret raw medical
data in functional terms and no medical opinion supported the
determination."). Here, the only physician opinions on

17

Plaintiff's legs include the functional limitation of sitting with the right lower leg elevated. While Dr. Omar Chavez performed medical testing on Plaintiff's legs, the ALJ explicitly stated he was considering Dr. Chavez's opinion only as it related to Plaintiff's allegations of back pain. [Tr. 24]. And while there is a state agency physician opinion in the record, [Tr. 64-66], the ALJ did not cite this opinion in his determination decision. Thus, the only physician opinions the ALJ discussed in making his decision states that Plaintiff must sit with his right leg elevated. Accordingly, the ALJ's RFC determination, which fails to account for this limitation or adequately explain why the limitation is not included in the RFC, is not supported by substantial evidence. Therefore, this matter must be remanded for further consideration.

**IV. The ALJ did not include all of Plaintiff's credible limitations in the hypothetical questions posed to the vocational expert.**

Plaintiff argues that the ALJ failed to include all of Plaintiff's credible limitations when asking the hypothetical question to the vocational expert because it did not include the limitation of sitting with the right leg elevated. When asking a hypothetical question, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted). The limitations the ALJ finds

18

credible must be supported by substantial evidence. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) ("There is substantial evidence in the record that the two hypothetical questions posed by the ALJ accurately portrayed [plaintiff's] credible limitations."). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citations omitted).

The ALJ relied on the hypothetical question that included the ALJ's RFC assessment in making his determination decision. [Tr. 44-45]. "Because the hypothetical question simply restates the RFC, and because, as discussed above, the RFC does not accurately portray [Plaintiff's] limitations, the hypothetical question suffers from the same problems as the RFC, and thus the ALJ erred in relying on the answer to this question." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009). Accordingly, this matter must be remanded to the ALJ for further consideration.

**V. The Commissioner's subsequent decision that Plaintiff was entitled to benefits does not provide a reason for remand.**

Plaintiff argues that the case should be remanded pursuant to 42 U.S.C. § 405(g) in light of the Commissioner's decision, on Plaintiff's second application for benefits, that Plaintiff was disabled. Effectively, Plaintiff requests a remand "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Based upon its location within 42 U.S.C. § 405(g), this is referred to as a sentence six remand. For the Court to remand under sentence six of 42 U.S.C. § 405(g), "it must be shown (i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citations omitted). "[E]vidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Id.* at 483-84 (citations omitted) (internal quotation marks omitted). Evidence is material "if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* at 484 (alteration in original) (citations omitted) (internal quotation marks omitted).

The Sixth Circuit has rejected an argument almost identical to Plaintiff's, and, thus, the Court finds that a sentence six remand is not warranted.

> [A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g). . . . [R]emand under sentence six is not meant to address the correctness of the administrative determination made on the evidence already before the initial ALJ. In addition, it is overly broad to read the words 'new evidence' in sentence six to include a subsequent decision based on the same evidence. . . . A sentence six remand would be appropriate based on [plaintiff's] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [plaintiff] had good cause for not raising in the prior proceeding. It is [plaintiff's] burden to make this showing under § 405(g), . . . but he has failed to meet this burden.

*Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citations omitted) (internal quotation marks omitted). Plaintiff has similarly failed to meet his burden in showing the subsequent decision was based upon new and material evidence that he had good cause for not raising in this proceeding. Therefore, remand based upon new and material evidence is inappropriate.

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [D.E. 11] be, and the same hereby is, **GRANTED;**

    (2)   that Defendant's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **DENIED**.

    This the 11th day of June, 2014.

**Signed By:**

*__Joseph M. Hood__*

**Senior U.S. District Judge**